David L. Mazaroli
Attorney for Plaintiff
250 Park Ave – 7th Floor
New York, NY 10177
Tel. (212)267-8480
Fax. (212)732-7352
*e-mail: dlm@mazarolilaw.com*
-----------------------------------------------------------------x
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| : | ECF CASE |
| VIGILANT INSURANCE COMPANY a/s/o | |
| Overseas Food Trading Ltd.,                                      : | |
| | 14 Civ. 6931 |
| Plaintiff,                         : | |
| | **VERIFIED COMPLAINT** |
| - against –                                 : | **IN ADMIRALTY** |
| | **INCLUDING** |
| M/V "COSCO NAGOYA", her engines,          : | ***IN REM* ACTION** |
| tackle,  boilers, etc., *in rem;* | |
| EVERGREEN MARINE (UK) LIMITED d/b/a        : | |
| EVERGREEN LINE;  EVERGREEN LINE; | |
| SEAFRIGO USA INC. d/b/a SEAFRIGO;          : | |
| SEAFRIGO INC.; SEAFRIGO; | |
| JASMINE SHIPPING S.A.;                     : | |
| COSCO CONTAINER LINES CO LTD., | |
| : | |
| Defendants. | |

----------------------------------------------------------------- x

Plaintiff, through its undersigned attorney, alleges as follows for its complaint

against the captioned *in personam* defendants and the M/V " COSCO NAGOYA"  *in rem*:

## FIRST CAUSE OF ACTION

**(Breach of Contract and of Duties Under COGSA, 46 U.S.C. § 30701)**

1.      This action involves admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and is within the admiralty and maritime jurisdiction of the United States and of this Honorable Court. This action also falls within the Court's federal question, pendent, ancillary, and supplemental jurisdiction.

2.      Plaintiff seeks recovery for nondelivery, shortage, loss and damage to shipments of frozen pastries (hereinafter "the Shipments") caused by defendants' breaches of contract and torts. The Shipments are further described in the annexed Schedule A, which is incorporated herein by reference and which provides *inter alia* the bill of lading numbers and the carrier-provided container numbers.

3.      For the Shipments defendants Evergreen Line and Evergreen Marine (UK) Ltd. doing business as Evergreen Line (hereinafter jointly referred to as "Evergreen") issued bills of lading which include a Southern District of New York forum selection clause.

4.      Plaintiff Vigilant Insurance Company ("Vigilant" or "plaintiff"), a New York corporation with a place of business at 55 Water Street, New York, NY, insured the Shipments during the subject transportation and sues herein as subrogated cargo insurer, having paid $407,408.55 to Overseas Food Products Ltd. (hereinafter "Overseas Food") for the claimed nondelivery, shortage, loss and damage which gives rise to this action.

5.      Vigilant's subrogor, Overseas Food, was at all material times the consignee, purchaser and owner of the Shipments and the holder of the subject bills of

lading, and a Merchant as defined therein. Overseas Food, who was the entity which sustained the loss arising from the claimed nondelivery, shortage, loss and damage to the Shipments, executed a subrogation receipt which states *inter alia* that Vigilant is subrogated to all rights of recovery on account of the loss and damage to the Shipments.

6.     Upon information and belief the Evergreen defendants are corporations or other legal entities organized under the laws of a foreign sovereign doing business in New York through Evergreen Shipping Agency (America) Corp., One Evertrust Plaza, Jersey City, NJ 0732.

7.     Upon information and belief defendants Seafrigo, Seafrigo Inc, and Seafrigo USA Inc. doing business as Seafrigo (hereinafter jointly "Seafrigo"), are corporations or other legal entities  organized under the laws of one or more of the fifty states and/or the laws of foreign sovereigns.[1]

8.     Upon information and belief defendant COSCO Container Lines Co. Ltd. (hereinafter referred to as "COSCO") is believed to be a corporation or other business entity organized under the laws of a foreign sovereign doing business in New York through COSCO Container Lines Americas, Inc., 100 Lighting Way, Secaucus, New Jersey.

9.     Upon information and belief defendant Jasmine Shipping S.A. (hereinafter referred to as "Jasmine") is believed to be a corporation or other business entity

---

[1] Upon information and belief defendant Seafrigo USA Inc. d/b/a Seafrigo  is a non-vessel operating common carrier ("NVOCC") and is the principal on a Ocean Transportation Intermediary Bond on file with the Federal Maritime Commission.

organized under the laws of a foreign sovereign, whose publicly disclosed address is said to be a place of business in care of COSCO.

10.     This Court has jurisdiction over each of the captioned defendants who conduct business as common carriers of cargo for hire, and as a providers of services related thereto, including with respect to shipments moving to, from, and through the Port of New York, and/or on behalf of business entities domiciled in New York.

11.     Upon information and belief at all material times the M/V "COSCO NAGOYA" (gross tonnage said to be 40,165), a vessel engaged in the common carriage of cargo by water for hire, was owned, operated, chartered, hired, managed and/or otherwise controlled by one or more of the defendants. Said vessel is subject to the *in rem* jurisdiction of this Honorable Court by virtue of the Letter of Undertaking dated April 25, 2014 posted by the vessel's protection and indemnity club The Standard Club Europe Ltd.

12.     For agreed consideration consisting of enhanced freight fees and accessorial charges, on or about December 22, 2013 Evergreen, Seafrigo, and the co-defendants contracted to provide specialized temperature-controlled carriage and related services with respect to the Shipments and to transport the Shipments by ocean vessel from Le Havre to New York.

13.     Each of said defendants was aware that the Shipments consisted of food products intended for human consumption and which required temperature-controlled care during all periods of custody, handling, storage and carriage.

14.     Defendants agreed that the Shipments would be maintained at the contractually specified temperature range during all periods of custody, handling, storage and carriage.

15.     Evergreen and/or Seafrigo provided seven refrigerating "reefer" containers and delivered said units to the shipper of the frozen pastries at or near Servon-sur-Vilaine, France, on an ex works basis.

16.     The Shipments were in good order and condition when delivered into the care, custody and control of the defendants at the designated ex works place of receipt and at the port of loading.

17.     The bills of lading and/or sea waybills issued by or on behalf of defendants for the Shipments disclosed the nature of the cargo and the fact that temperature-controlled care and carriage in reefer containers at specified temperatures was contracted for.

18.     Defendants designated the M/V "COSCO NAGOYA" to carry the Shipments from Le Havre to New York, which is represented as the port of discharge on each of the sea waybills which are listed on the annexed Schedule A.

19.     Defendants failed to deliver the Shipments at the intended discharge port.

20.     According to defendants during the ocean carriage aboard the M/V "COSCO NAGOYA" the Shipments carried in containers EMCU5298620 and BMOU9228842 were lost overboard.

21.     In addition during the ocean voyage, and otherwise during defendants' custody and/or period of responsibility, the Shipments carried in the other five containers (see Schedule A) sustained damage, including but not limited to damage caused

by uncargoworthy reefer containers and damage due to exposure to non-complying temperatures and elements,  all of which rendered the frozen pastries unfit for intended sale, distribution and human consumption.

22.     The aforesaid nondelivery, loss and damage was caused by (a) defendants' breaches and violations of their nondelegable duties as common carriers; (b) their reckless failure to properly load, secure, stow, lash, carry, care for, refrigerate, discharge and deliver the subject cargo; (c) the unseaworthiness of the carrying vessel and containers; and (d) by other circumstances for which defendants are liable to plaintiffs under the applicable statutory law, including the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 note, the general maritime law and the governing carriage contracts.

23.     As a result of the aforesaid defendants are liable to plaintiff for damages in the amount of $407,408.55,  as nearly as can presently be estimated, no part of which has been paid although duly demanded.

24.     Plaintiff sues on its own behalf and as agent and trustee for and on behalf of anyone else who may now have or hereafter acquire an interest in this action.

25.     Plaintiff has performed all conditions precedent required of it under the premises.

## SECOND CAUSE OF ACTION
### (Material Deviation/Fundamental Breach)

26.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 21,  24 and 25 of this complaint.

27.     Evergreen, Seafrigo and the co-defendants charged supplemental fees to provide specialized temperature-controlled care during all stages of the transportation.

28.     By exposing the Shipments to non-conforming temperatures said defendants committed fundamental breaches of, and material deviations from, the terms of the specialized temperature-control carriage contracts.

29.     As a proximate result of the foregoing plaintiff and those on whose behalf it sues has sustained damages in the amount of in the amount of $407,408.55, as nearly as can presently be estimated, no part of which has been paid although duly demanded.

### THIRD CAUSE OF ACTION
#### (Breach of Bailment Obligations)

30.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 21, 24 and 25 of this complaint.

31.     At the time the aforementioned nondelivery, shortage, loss and damage to the Shipments occurred defendants, together with the entities they hired to act on their behalf, were acting as bailees of the Shipments and in their own capacity, or through their contractors, agents, servants or sub-bailees, had a duty to safely and properly keep, care for and deliver the Shipments in the same good order and condition as when entrusted to them. Defendants also had a duty to ensure that the services provided for the Shipments were performed with reasonable care and in a non-negligent and workmanlike manner.

32.     Defendants breached their duties and obligations as bailees by failing to deliver certain of the Shipments and by causing damage to the other Shipments, including damage caused by failure to provide and maintain requisite temperature-controlled care.

33.     As proximate result of the foregoing plaintiff and those on whose behalf it sues has sustained damages in the amount of $407,408.55, as nearly as can presently be estimated, no part of which has been paid although duly demanded.

## FOURTH CAUSE OF ACTION

### (Negligence and/or Recklessness, and/or Willful Misconduct)

34.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 21, 24 and 25 of this complaint.

35.     At all material times defendants had a duty to properly handle, carry, store, refrigerate, monitor, protect and care for the Shipments.

36.     The damage to the Shipments was caused by defendants' negligence, recklessness, wanton neglect, and willful misconduct in that defendants, their agents, servants, sub-carriers, participating carriers, subcontractors, terminal operators, stevedores, warehousemen and employees failed to properly handle, store, refrigerate, stow, carry, protect and care for the Shipments, including but not limited to during the period of post-casualty custody en route back to, and at, Le Havre.

37.     As a proximate result of the foregoing plaintiff and those on whose behalf it sues has sustained damages in the amount  of $407,408.55, as nearly as can presently be estimated,  no part of which has been paid although duly demanded.

WHEREFORE, plaintiff respectfully prays:

A.      That process in due form of law issue against the captioned *in personam* defendants Evergreen Marine (UK) Limited doing business as Evergreen Line; Evergreen Line; Seafrigo USA Inc. doing business as Seafrigo;  Seafrigo Inc.; Seafrigo;  Jasmine Shipping S.A.; COSCO Container Lines Co. Ltd., and against the M/V "COSCO NAGOYA", *in rem,* citing them to appear and answer all and singular the aforesaid matters;

B.        That The Standard Club Europe Ltd. be required to file in this action a

Claim of Owner to the M/V "COSCO NAGOYA" and an *in rem* appearance on behalf of

said vessel and to otherwise comply with all obligations under the Letter of Undertaking

including the filing of a bond upon demand of plaintiff;

C.        That judgment be entered against the captioned *in personam* defendants

and the vessel *in rem*, jointly and severally in the amount of $407,408.55, together with

incidental expenses,  plus prejudgment interest at the rate of 9% per annum from the date of

the intended delivery of the Shipments;

D.        That  plaintiff  be afforded such other and further relief as warranted by

justice, including an  award  of  reasonable  attorneys  fees  and  all  costs  incurred  in  the

prosecution of this action.

Dated:   New York, New York
          August 26, 2014

                              LAW OFFICES,
                              DAVID L. MAZAROLI

                              *s/David L. Mazaroli*
                              _____
                              David L. Mazaroli
                              Attorney for Plaintiff
                              250 Park Ave.-7th Floor
                              New York, New York 10177
                              Tel: (212)267-8480

**SCHEDULE A**

| | |
|---|---|
| Vessel and Voyage : | M/V "COSCO NAGOYA" Voy. 042W |
| Place of Shipment: | Servon-sur-Vilaine |
| Port of Loading: | LeHavre, France |
| Port of Discharge: | New York (intended) |
| Bills of Lading: | Evergreen Sea Waybills |
| | EGLV540300172886 |
| | EGLV540300172525 |
| | EGLV540300172878 |
| | EGLV540300172550 |
| | EGLV540300172541 |
| | EGLV540300172517 |
| | EGLV540300172533 |
| | dated December 22, 2013, and others |
| Containers/Quantities: | EGHU5007968   (1920 cartons) |
| | EGHU5011628   (1921 cartons) |
| | EGSU5009460   (1960 cartons) |
| | EISU5697198   (1920 cartons) |
| | EISU5703217   (1885 cartons) |
| | EMCU5298620  (1960 cartons) |
| | BMOU9228842  (1925 cartons) |
| Seafrigo Freight Invoices: | 520001, 520005, 520009, 520012, 520015, 520019, 520021 |
| Nature of Cargo: | Frozen desserts, including but not limited to croissants, pain chocolat, etc in 13,491 cartons |
| Claim Amount: | $407,408.55, including C&F value of cargo |

## <u>VERIFICATION</u>

STATE OF VIRGINIA      )
                            ) ss:
COUNTY OF CHESAPEAKE  )

        Jacqueline Placchetti, being duly sworn, deposes and says:

        1.      I am employed as a Recovery Examiner of Chubb & Son, the insurance manager of plaintiff Vigilant Insurance Co., and in said capacity I am authorized to make this verification and affidavit on behalf of plaintiff.

        2.      I have read the foregoing complaint and I am familiar with the contents thereof.

        3.      The same are true to the best of my knowledge, except as to those matters alleged on information and belief and as to those matters I believe them to be true.

        4.      The sources of my information and the grounds for my belief are records, information, and documents contained in the files of Chubb & Son, including electronic data, relating to the matters in suit and information which has come to my attention in the performance of my duties as a Recovery Examiner.

                                                  *s/Jacqueline Plachetti*
                                                Jacqueline Placchetti

Sworn to before me this
 22 day of August 2014:
*s/Mark Childers*
_____
      Notary Public